## Case No. 5,600.

GOODYEAR DENTAL VULCANITE CO. v. VAN ANTWERP.

[2 Ban. & A. 252; 9 O. G. 497.]

Circuit Court, D. New Jersey. March, 1876.

PATENTS — INFRINGEMENT — AWARD OF DAMAGES — HOW COMPUTED — NO PROFIT BY DEFENDANT AS A DEFENSE.

1. The principle on which damages are to be awarded for violation of patent rights, considered.

2. In applying the provision of the statute, that, in a suit in equity, the court may award, "in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby," it is pertinent to inquire how the owner of the patent has seen fit to use his invention. He may retain a close

1 [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

monopoly of it, and then the damages are computed by investigating the defendant's profits, which are reckoned a fair criterion of the complainant's loss. Or he may grant license fees, allowing the benefits of his invention to every one who will pay a stipulated price for its use, in which case the amount of the license fee fixed by the complainant is usually considered a proper compensation in damages, except in those cases where the evidence warrants an allowance of exemplary or punitive damages by reason of a wanton infringement.

[Cited in Buerk v. Imhaeuser, Case No. 2,107.]

3. In a suit for infringing a patent it is no answer to a claim of damages that the defendant made no profits by his infringement.

[This was a bill in equity by the Goodyear Dental Vulcanite Company against Charles L. Van Antwerp.]

B. F. Lee, for complainant.

P. Van Antwerp, for defendant.

NIXON, District Judge. The bill of complaint in this case was filed June 17, 1873. It prays that the defendant may be decreed to account for, and pay over to the complainant, all such gains and profits as have accrued to him from his infringement of certain letters patent of complainant, and also, in addition thereto, the damages which have been sustained by the complainant by reason of the said infringement. A decree pro con. was entered against the defendant December 2, 1873, and an order of reference to the master to take an account of the gains and profits, and also of the damages sustained by the complainant. The master has reported no gains and profits, and that one hundred and twenty dollars have been proved as damages.

Four exceptions have been filed to the confirmation of the report: 1. Because the master erred in not stating any facts, as the basis of his report, from which an opinion could be formed as to the matters in question. 2. Because the master erred in not reporting the evidence taken before him, or upon which his report is founded. 3. Because there is no evidence of any damages whatever, and the master should have found nominal damages only. 4. Because there was not sufficient evidence to justify the finding of one hundred and twenty dollars damages.

It will not be necessary to consider these objections seriatim. The only witnesses produced for examination before the master were the defendant and Josiah Bacon, the treasurer and general agent of the complainant. The former testified that he first used rubber on his own account about the latter part of 1870, or the early part of 1871, and that he made his last plate of rubber the 9th of October, 1873. He also exhibited a written statement of rubber dental work, and receipts, charges, and expenses, from June, 1872, to October 10, 1873, and deposed that he had used none other except the three pieces of rubber work made about the beginning of 1871. Mr. Bacon was sworn to

prove the rates of license charged by the complainant for the use of their patents in constructing dental plates; and testified that sixty dollars per annum was their minimum price in all cases, unless the license was taken and paid for in advance. This testimony is annexed to the report of the master. He found that no gains and profits were shown to have been received, and that one hundred and twenty dollars damages have been proved.

The exceptions filed, suggest for consideration the principle on which damages are to be awarded for violation of patent rights. By section 4921 of the Revised Statutes, which is substantially a re-enactment of the 55th section of the act of July 8, 1870 [16 Stat. 206], courts of equity are authorized, upon a decree being entered in any · case for an infringement, to award to the complainant, "in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby." Before such jurisdiction was vested in the equity courts, damages could only be recovered by suits at law. It is supposed that this somewhat anomalous and confusing authority was given in equitable proceedings to prevent multiplicity of suits. However that may be, the power exists, and it is for the court to determine in all cases how it should be exercised.

The terms "profits" and "damages" as used in the act are hardly convertible. They seem to mean different things. The latter are to be awarded "in addition" to the former. Profits, doubtless, refer to ·what the defendant has gained by the unlawful use of the patented. invention, and damages, to what the complainant has. lost. Before the act of 1870 it was incumbent on the patentee to make his election of remedies, and to proceed at law for the damages which he could show had been sustained from the infringement, or in equity for the gains and profits that the defendant had realized for the unauthorized use of his property. Now no such election is necessary, because he is entitled to pray in one action for the relief both in regard to profits and damages. In order to ascertain these, it is generally pertinent to inquire how the owner of the patent has seen fit to use his invention. He may retain a close monopoly in it, and then the damages are computed by investigating the defendant's profits, which are reckoned a fair criterion of the complainant's loss. Or he may grant license fees allowing the benefits of his invention to every one who will pay a stipulated price for its use, in which case the amount of the license fee fixed by the complainant is usually considered a proper compensation in damages, except in those cases where the evidence warrants an allowance of exemplary or punitive damages by reason of a wanton infringement. This was the rule of compensation adopted or sanctioned by the supreme court in Seymour v.

McCormick, 16 How. [57 U. S.] 490; in the Second circuit, in the cases of Sickels v. Borden [Case No. 12,832] and Goodyear v. Bishop [Id. 5,559]; in the Ninth circuit, in Spaulding v. Page [Id. 13,219]; and in this court in Emerson v. Simm [Id. 4,443]. ·

In the case under consideration the master reported that there was no proof of any gains or profits, and he allowed none. He took testimony showing that the complainant sold licenses to dentists to make or use its inventions; that the minimum price when payment was not made in advance was sixty dollars per annum; that the defendant began to use the rubber plates about the beginning of the year 1871, and continued the use, with intervals, until the month of October, 1873; and from the evidence found one hundred and twenty dollars damages, being the amount of a license for two years. The defendant's counsel, on the argument, did not seem to comprehend how there could be any damages to the complainant when there were no profits to the defendant. He strongly ·intimated that because his client made no profits by his infringement he ought to pay no damages. But that is a question which the defendant should have considered when he began to use the complainant's property without authority, and is no answer to a claim of damages. It is as if one went to a livery stable and took a horse without the keeper's permission for a contemplated journey, and when sued for the trespass should attempt to show that he ought to pay nothing, because the use of the animal had not resulted in any pecuniary benefit to him, or because .the objects for which the journey was undertaken had not been accomplished. In such a case it would not seem unreasonable that the keeper should at least recover·the amount that he was in the habit of receiving from other parties for a similar service or use of his property.

The objections to the master's report are all overruled.